761 F.2d 1013
 Vincent VIZBARAS, Individually and as Personal
Representative of the Estate of Peter Vizbaras,
deceased, Appellant,
and
Linda Vizbaras,* Individually and as Personal
Representative of the Estate of Peter Vizbaras,
deceased, Plaintiff,
v.
Lieutenant Edward PRIEBER, Anne Arundel County Police;
Officer Edward Zeminsky, Anne Arundel County Police;
Officer Wilbert Jones, Anne Arundel County Police; Officer
Craig L. Dodson, Anne Arundel County Police; Sergeant John
J. Hannan, Anne Arundel County Police; Officer William E.
Daywalt, Jr., Anne Arundel County Police; Officer Henry
McClung, Anne Arundel County Police; Officer David L.
Griffith, Anne Arundel County Police, Appellees.
 No. 84-1073.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1985.
Decided May 14, 1985.
 
 Michael Avery, Boston, Mass. (Avery & Friedman, Boston, Mass., Michael O'Reilly, Rees, Broome & Diaz, Vienna, Va., on brief), for appellants.
 David S. Bliden, Deputy County Sol., Annapolis, Md. (Stephen R. Beard, County Sol., James S. Gibbons, Asst. County Sol., Annapolis, Md., on brief), for appellees.
 Before WINTER, Chief Judge, HALL, Circuit Judge, and MACKENZIE, Chief District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Vincent and Linda Vizbaras (the Vizbarases) appeal from the district court's entry of judgment on the jury's verdict in favor of defendants on plaintiffs' 42 U.S.C. Sec. 1983 claim of excessive force. They also appeal from the district court's order dismissing their Sec. 1983 action against Anne Arundel County, Maryland, (the "County"), and the district court's grant of a directed verdict as to their unlawful entry and illegal arrest claims. We affirm.
 
 I.
 
 2
 On April 17, 1982, Anne Arundel County Police Officers Craig L. Dodson, Leonard Zeminsky, Wilbert Jones, Lieutenant Edward Prieber, and another officer investigated a complaint of an attempted breaking and entering at the home of Voldemar Einberg. Einberg informed the officers that his neighbor, Peter Vizbaras, had been trying to break into his house. Einberg told the officers that, in trying to get in, Peter had broken a window and kicked in Einberg's door. The officers noticed some broken glass and a substance which appeared to be blood at Einberg's door. They learned that Peter had assaulted Einberg on a prior occasion and that Peter had also previously beaten another neighbor. Lieutenant Prieber advised the officers to go next-door to the Vizbarases' and arrest Peter for burglary.
 
 
 3
 Officers Dodson, Zeminsky, and Jones went to the Vizbaras home, where Vincent Vizbaras, Peter's father, answered the door. The officers informed Mr. Vizbaras that they wanted to question Peter about the incident at Einberg's, and Mr. Vizbaras invited the police officers inside. After the officers were in the house, Peter came downstairs from the second floor. The officers noticed that his foot was bandaged and bleeding. Officer Dodson informed Peter that he was a suspect in the breaking and entering and that he would have to go to the police station. Peter refused to go with the police officers, asked them to leave, and went back upstairs. Afterwards Peter returned downstairs, and the officers insisted that he accompany them to the police station. The Vizbarases asked the officers to leave, and the officers refused. The Vizbarases explained to the officers that Peter was mentally ill, and they offered to take him to the station themselves.
 
 
 4
 A skirmish subsequently arose in which the police officers seized Peter, trying to subdue him. It took all three officers to wrestle Peter, who was six feet three inches tall and weighed 278 pounds, to the floor. According to the police officers, it took them five minutes to get Peter in handcuffs, after which he kicked violently, and they had a hard time holding him down. Officer Dodson used the radio to call for help. Four additional officers responded to the call for assistance.
 
 
 5
 In addition to handcuffing Peter, who was lying with his chest on the floor, the officers placed two pairs of nylon cuffs on Peter's ankles in order to restrain him from kicking. Peter broke the nylon cuffs, so the officers secured leg shackles between his ankles. In order to prevent Peter from kicking his feet up and down and sideways, the officers used two sets of handcuffs to connect the chain on the leg shackles to the chain on the handcuffs on Peter's wrists, resulting in a "cradle cuff." In this position, Peter's chest was on the floor, his hands cuffed behind him, with the leg shackles and handcuffs joined so that his legs were at a forty to forty-five degree angle from the floor.
 
 
 6
 After being cradle cuffed, Peter continued to kick, alternating between going into a rage and being calm. In his quiet periods, Peter moved his head from side to side and conversed with his parents. During one of the calm periods, the officers noticed that Peter had stopped breathing, and they immediately tried to resuscitate him. Their efforts proved to be of no avail, and Peter died of positional asphyxiation as a result of his inability to breathe.
 
 
 7
 On October 29, 1982, the Vizbarases filed this civil rights action against Maxwell Frye, Chief of the County Police Department, Lieutenant Prieber, and Officers Zeminsky, Jones, and Dodson, alleging, inter alia, that the officers had unconstitutionally entered their home and arrested their son, and that the officers had killed their son by using unreasonable and excessive force while arresting him, in violation of 42 U.S.C. Sec. 1983. The Vizbarases joined the County as a defendant and amended their complaint to include additional police officers as defendants.
 
 
 8
 The district court subsequently dismissed the actions against the County and Chief Frye. The case with respect to the remaining defendants was tried to a jury. At the close of the Vizbarases' case, the district court directed a verdict for the defendants on the Vizbarases' claims that the police officers unconstitutionally entered their home and arrested their son.
 
 
 9
 With respect to the claim of excessive force, following the introduction of all the evidence, the district court charged the jury, inter alia, on the affirmative defense of qualified immunity which had been raised by the defendants. The district court instructed the jury as follows:
 
 
 10
 The defendants in this case may avail themselves of the defense of good faith. Police officers as officers of a state have a realistic good faith belief in their action, and the reasonableness of their action, if at the time of the incident, they believe their conduct to be constitionally [sic] permissible and that such belief is reasonable. Police officers also have a good faith reliance on standard operating procedures, if at the time of the incident they relied on the standard operating procedures of their institution when responding to an incident and when such reliance is honest and in its intention and reasonable.
 
 
 11
 Subsequently, the district court further charged that:
 
 
 12
 A defendant may not avail himself of the [qualified immunity] defense until he has proved that he has a good faith belief in the legality of what he did. The defendant is not immune from liability for damages under Section 1983 if he knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the person affected. The defendant must prove that he believed in good faith that his conduct was lawful, and that his belief itself was reasonable.
 
 
 13
 The defendant is not entitled to good faith defense if he acted with malicious intent to violate the plaintiff's constitutional right or cause other injury to the plaintiff or if the defendant knew or should have known that his action would violate the plaintiff's constitutional rights.
 
 
 14
 The jury found for the defendants. This appeal followed.
 
 II.
 
 15
 On appeal, the Vizbarases contend that the district court erred in charging the jury on the defense of "good faith" or qualified immunity and in permitting the defendants to introduce evidence of their good faith reliance upon the standard operating procedures of their police department. Appellants further argue that the district court erred in dismissing their claims against Anne Arundel County; and that the district court erred in directing a verdict for defendants on the illegal entry and unlawful arrest claims. We disagree.
 
 
 16
 Relying upon Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Vizbarases maintain that the district court erred in affording the officers the defense of qualified immunity. They quote Harlow for the proposition that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19, 102 S.Ct. at 2738-39. The Vizbarases maintain that since the law at the time of this incident was that police officers could not use unreasonable and excessive force in making an arrest, the jury should not have been instructed on the qualified immunity defense. The use of force, however, is not per se unconstitutional. We conclude that, under the facts of this case, it was for the jury to determine whether the restraint used by the police officers constituted excessive force. Therefore, we hold that the district court did not err in instructing the jury on the good faith immunity defense. Cf. Bailey v. Turner, 736 F.2d 963 (4th Cir.1984) (use of mace on prisoner not per se unconstitutional so as to require denial of good faith immunity defense). Likewise, we reject the Vizbarases' claim that the district court erred in allowing the officers to introduce evidence of their good faith reliance upon standard police department operating procedures.
 
 
 17
 The Vizbarases further rely upon Harlow in their assertion that the district court erred by including subjective factors in defining the qualified immunity defense. We rejected a similar argument in McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984). In McElveen, we held that "[a]lthough the Harlow Court indicated that the good-faith defense turns primarily on objective factors, it did not hold that an exclusively objective standard was to be applied to claims that proceed to trial. Thus, the County's argument that the standard for good-faith immunity must be purely objective, is untenable...." Id. at 957-58 (citations omitted). Our reading of the instructions at issue in this case leads us to conclude, as we did in McElveen, that "[t]he good-faith standard employed by the district judge ... included both the subjective element of good faith 'belief,' and the objective element of 'reasonableness' for that belief." Id. at 956 (footnote omitted). Therefore, the Vizbarases' contention that the district court improperly included subjective elements in instructing the jury on the defense of good faith immunity must fail.
 
 III.
 
 18
 The Vizbarases further allege that the district court erred in dismissing their claims against the County. They contend that because the County was dismissed early in the litigation, they were unable to conduct sufficient discovery to prepare a case against the County. This claim is meritless.
 
 
 19
 At the hearing on the County's motion to dismiss or, in the alternative, for summary judgment, the Vizbarases neither offered any evidence to support their claim that the County had a custom and history of using excessive force, nor did they make any request that they be allowed to undertake further discovery. We held in Wellington v. Daniels, 717 F.2d 932 (4th Cir.1983), that "[a] single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate Sec. 1983 liability." Id. at 936. As the Vizbarases did not offer any evidence of other alleged incidents involving the use of excessive force by the County police officers, we hold that the district court did not err in dismissing the Vizbarases' claim against the County.
 
 IV.
 
 20
 Finally, the Vizbarases argue that the district court erred in directing a verdict on their claims that the officers had unconstitutionally entered their home and arrested their son without a warrant. According to appellants, the officers did not indicate that they intended to arrest Peter. Thus, appellants maintain that the officers gained entry only because they deceptively described their purpose to Vincent Vizbaras, and that the officers' deception nullified Mr. Vizbaras' consent.
 
 
 21
 In United States v. Briley, 726 F.2d 1301 (8th Cir.1984), a third-party consent to a warrantless entry was made in response to an officer's representation that he wished to speak to the defendant about an important matter. Id. at 1303. The Eighth Circuit held this consent to be valid and, in so doing, noted that there was no deceitful misrepresentation even though the officers ultimately arrested the defendant. Similarly, we find that in this case the officers' explanation as to why they were present at the Vizbaras house was not a misrepresentation, much less an intentional one. Nor is there any evidence that the officers' statements to Mr. Vizbaras caused him any duress or coerced him into permitting them entry into the house. Therefore, we conclude that the district court did not err in finding that Mr. Vizbaras consented to the police officers' entering his home.
 
 
 22
 We further find that the Vizbarases' contention that the officers unconstitutionally arrested their son is without merit. Once the officers were inside the house, they had a right to arrest Peter because they had probable cause to believe that he had been involved in an attempted breaking and entering. Accordingly, we hold that the district court did not err in directing a verdict for the officers with respect to the Vizbarases' claims of illegal entry and unlawful arrest.
 
 V.
 
 23
 On the basis of the foregoing, the judgment of the district court is affirmed.
 
 
 24
 AFFIRMED.
 
 
 25
 WINTER, Chief Judge, concurring and dissenting:
 
 
 26
 I agree that the district court correctly dismissed plaintiffs' claim against Anne Arundel County, and to that extent I concur in the majority opinion. But I think that the district court committed plain error in instructing the jury that the individual defendants could avail themselves of the defense of good faith. Further, I think that even if the qualified or good faith immunity defense were available, the district court committed plain error in misstating the law governing the defense. Finally, I think that the district court erred in directing a verdict for defendants on plaintiffs' claim that their rights were violated by the entry into their home and that their deceased son's rights were violated by an unlawful arrest. I respectfully dissent. Except with respect to the County, I would reverse and grant a new trial.I.
 
 
 27
 The jury was instructed correctly, albeit redundantly, that plaintiffs were entitled to recover on their claim under 42 U.S.C. Sec. 1983 if the jury found that the police officers in arresting the deceased had used "more or greater force or means on the decedent, Peter Vizbaras, than would have appeared to a reasonable person in like circumstances to be necessary in order to accomplish any lawful purpose or purposes intended." But then the jury was instructed, as quoted in the majority opinion, that "defendants ... may avail themselves of the defense of good faith" and that "[p]olice officers as officers of a state have a realistic good faith belief in their action, and the reasonableness of their action, if at the time of the incident, they believe their conduct to be constitionally [sic] permissible and that such belief is reasonable." Finally, in the course of instructing the jury with regard to plaintiffs' negligence claim, the district court again adverted to plaintiffs' Sec. 1983 cause of action saying that
 
 
 28
 [t]he defendant is not immune from liability for damages under Section 1983 if he knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the person affected. The defendant must prove that he believed in good faith that his conduct was lawful, and that his belief itself was reasonable.
 
 
 29
 I perceive two reversible errors in these instructions. First, I think that the district court should not have submitted the issue of qualified immunity to the jury. Second, even if submitted, the district court's formulation of the doctrine was legally incorrect.[1]
 
 II.
 
 30
 The controlling authority on application of the doctrine of qualified immunity is Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There the Supreme Court unequivocally said that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19, 102 S.Ct. at 2738-39.[2] In my view, the law on April 17, 1982, the date of the decedent's arrest and tragic death, was and still is "clearly established" that police officers may not subject a person to unreasonable and excessive force measured by an objective standard when taking him into custody. King v. Blankenship, 636 F.2d 70 (4 Cir.1980); Ridley v. Leavitt, 631 F.2d 358 (4 Cir.1980); Jenkins v. Averett, 424 F.2d 1228 (4 Cir.1970). Thus the only issue to be submitted to the jury, as the jury was initially correctly instructed, was whether "more or greater force" was applied to the decedent in effecting his arrest "than would have appeared to a reasonable person in like circumstances to be necessary in order to accomplish any lawful purpose or purposes intended."[3] Defendants' good faith belief, measured objectively or subjectively, was not an issue. Therefore I am impelled to conclude that the jury was misled as to the proper basis on which to decide the case and its verdict for defendants and the judgment entered thereon should not be permitted to stand.[4]
 
 
 31
 I agree with plaintiffs that even if a qualified immunity defense instruction were proper, the district court misstated the applicable law by improperly introducing a subjective test. Except for McElveen v. County of Prince William, 725 F.2d 954 (4 Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984), we have consistently read Harlow as eliminating the subjective element from the defense, and we have focused instead on whether the challenged conduct violated clearly established rights. See Jensen v. Conrad, 747 F.2d 185, 195 n. 13 (4 Cir.1984); Whisenant v. Yuam, 739 F.2d 160, 165 (4 Cir.1984); Slakan v. Porter, 737 F.2d 368, 376-77 (4 Cir.1984).
 
 
 32
 While McElveen read Harlow as placing primary emphasis on objective factors, it read it "not [to] hold that an exclusively objective standard was to be applied to claims that proceeded to trial." 725 F.2d at 958 (emphasis in original). McElveen was decided January 26, 1984, and to the extent that it read Harlow to preserve consideration of a subjective element as part of the qualified immunity defense, its holding was displaced on June 28, 1984 by the decision in Davis v. Scherer, --- U.S. ----, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Davis characterized Harlow as follows:
 
 
 33
 Harlow v. Fitzgerald, supra, rejected the inquiry into state of mind in favor of a wholly objective standard. Under Harlow, officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 US, at 818, 73 L Ed 2d 396, 102 S Ct 2727 [at 2738]. Whether an official may prevail in his qualified immunity defense depends upon the "objective reasonableness of [his] conduct as measured by reference to clearly established law." Id. (footnote deleted). No other "circumstances" are relevant to the issue of qualified immunity.
 
 
 34
 --- U.S. at ----, 104 S.Ct. at 3018, 82 L.Ed.2d at 147. (emphasis added). Thus it was "plain error" on the part of the district court to instruct the jury that the police officers' "realistic good faith" or their "good faith" beliefs were elements to be considered in whether to afford them qualified immunity. Even if qualified immunity is an element of the case, plaintiffs are entitled to a new trial because of this erroneous instruction.
 
 III.
 
 35
 To my mind, the district court committed a third reversible error when it directed a verdict for defendants on plaintiffs' claim that their rights were violated by defendants' entry into plaintiffs' home without an arrest or search warrant and that their son's rights were violated by an unlawful arrest.
 
 
 36
 Although lacking a warrant, defendants clearly had probable cause to arrest plaintiffs' son. They could have arrested him anywhere outside of his home, but absent a warrant or valid consent, they could not have arrested him in his home. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Further, consent, if relied on to validate the arrest, must be freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). If consent is obtained by coercion or misrepresentation, it is not freely and voluntarily given. United States v. Tweel, 550 F.2d 297 (5 Cir.1977).
 
 
 37
 As I read the record, there is evidence that defendants told plaintiffs that they wished to talk to the son about his involvement in the attempted breaking and entering, and though they intended to arrest the son, defendants did not communicate this intention to his parents. Further, the decedent's father testified that when defendants announced their intention to arrest his son, he ordered them to leave his house and to leave his son alone if they did not have an arrest warrant.
 
 
 38
 While I agree that there was consent to enter the house, I think that there was a jury question as to whether the consent was limited to questioning and did not include the arrest, cf. Mason v. Pulliam, 557 F.2d 426 (5 Cir.1977); United States v. Dichiarinte, 445 F.2d 126 (7 Cir.1971), whether consent to arrest was obtained deceptively and hence not voluntarily given, cf. Schneckloth v. Butstamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Phillips, 497 F.2d 1131, 1135 (9 Cir.1974); Alexander v. United States, 390 F.2d 101 (5 Cir.1958), or whether, if consent to arrest was voluntarily given, it was withdrawn before the arrest was made, cf. United States v. Ward, 576 F.2d 243 (9 Cir.1978); Mason v. Pulliam, 557 F.2d at 429. A verdict for defendants should not have been directed.
 
 
 39
 To summarize, I would affirm the judgment for Anne Arundel County and reverse the judgment for the other defendants, awarding plaintiffs a new trial to be conducted in conformity with the views I have expressed.
 
 
 
 *
 Only Vincent Vizbaras signed the appeal. Linda Vizbaras is a plaintiff and has throughout this opinion been included with her husband as an appellant. Technically, Vincent Vizbaras is the sole appellant
 With respect to the qualified immunity issues, the defendants contend that the Vizbarases did not preserve these claims for review. Although the Vizbarases did state a general objection "to immunity," with respect to the qualified immunity instruction, they did not state their grounds for objecting, as required by Fed.R.Civ.P. 51. Additionally, the Vizbarases objected to the introduction of evidence concerning the police department's procedures. However, this objection was made on the ground that there had been "no evidence of standard operating procedures," and not on the ground that such a defense was improper, as is now asserted. Therefore, we agree with the defendants that these issues were not properly preserved for review. Nevertheless, we will consider these issues in order to determine whether there was any fundamental error, as alleged by the Vizbarases.
 
 
 [1]
 As the majority points out, it is debatable if plaintiffs unequivocally preserved these issues for review. The point need not long detain us because the errors were so fundamental that they constitute "plain error." Fed.R.Civ.P. 51; Miller v. Premier Corp., 608 F.2d 973, 983 (4 Cir.1979). In this, essentially a wrongful death claim, if the jury were incorrectly instructed as to how to return a verdict, I would think that to ignore the error "would result in a denial of fundamental justice" and therefore the error should be corrected. See Furka v. Great Lakes Dredge & Dock Co., 755 F.2d 1085, 1089 (4 Cir.1985)
 
 
 [2]
 Harlow does recognize that a defendant is entitled to immunity if he shows that he reasonably should be excused from knowing the law. This aspect of Harlow is irrelevant here because defendants make no claim that there were reasons for them not to know the law
 
 
 [3]
 I emphatically reject the majority's reasoning that since the use of force is not per se unconstitutional and that an objectively reasonable amount of force necessary to accomplish the arrest could lawfully be employed, it follows that, in determining whether the police used excessive force, the jury properly could consider good faith immunity. The majority apparently reasons that because neither we nor the Supreme Court has specified the exact quantum of force that constitutes excessive force, the law was not "clearly established," and the qualified immunity defense was properly available. Yet many, perhaps most, constitutional deprivations involve questions of degree where the precise contours of the constitutional protections have not been drawn. The majority would therefore render Harlow a virtual nullity and mistakenly "turn qualified into absolute immunity by requiring immunity in any new fact situation." Hobson v. Wilson, 737 F.2d 1, 26 (D.C.Cir.1984)
 
 
 [4]
 I agree with the majority that evidence of standard police department operating procedures was admissible, but only as a guide to the jury as to what is reasonable under given circumstances, and not to establish defendants' good faith