382 S.E.2d 43

**FOX GROCERY COMPANY, a West Virginia Corporation,**

v.

**UNIVERSITY FOODS, INC., etc.; Samuel R. Sellaro, Lois Ann Sellaro, Anthony D. Sellaro, and Mary Sellaro, Individually; Peter J. Schmitt Co., Inc., a Corporation; and Lawrence J. Mattar, Individually.**

No. 18547.

Supreme Court of Appeals of West Virginia.

June 8, 1989.

---

L. Alvin Hunt, Hunt & Wilson, Charleston, Samuel P. Kamin, Goldberg & Kamin, Pittsburgh, Pa., for Fox Grocery Co.

Charles S. Armistead, Baker & Armistead, Morgantown, for Univ. Foods & Sellaros.

H. Yale Gutnick, Susan A. Yohe, Strassburger, McKenna, Gutnick & Potter, Pittsburgh, Pa., for Schmitt Co.

Thomas C. D'Agostino, Mattar, D'Agostino, Kogler & Runfola, Buffalo, N.Y., for Lawrence Mattar.

BROTHERTON, Chief Justice:

This case is before the Court on Fox Grocery Company's appeal from the summary judgment order entered by Judge Larry Starcher on April 16, 1987, in favor of the appellees, University Foods, the Sellaros, Peter J. Schmitt Co., and Lawrence J. Mattar. The appellant, Fox Grocery Co., is a West Virginia corporation and a grocery wholesaler. The appellee, University Foods (hereinafter referred to as UFI), is also a West Virginia corporation owned by Samuel, Lois, Mary, and Anthony Sellaro. Peter J. Schmitt Co., a New York corporation, operates as a grocery wholesaler.

Lawrence J. Mattar, a Florida resident, is employed by Peter J. Schmitt Co. as its agent.

University Foodland was a grocery store owned and operated by the Sellaro family. The store, which was built in 1965, was destroyed in a fire in 1982. The store was thereafter rebuilt and on September 23, 1983, Fox (as lessee and sublessor) and UFI (as lessor and sublessee) executed a lease and sublease for that property effective from January 29, 1984, to January 28, 1999. In a supplement to the lease, it was agreed that the lease could be cancelled with written notice to the other party only after industrial revenue bonds totalling $1.35 million, issued to UFI by the Monongalia County Commission, were paid in full.

On January 27, 1984, UFI granted to Fox a first refusal option which would allow Fox to purchase the assets of the University Foodland in the event of its sale or transfer. In the option, the parties agreed that Fox had the right of first refusal to purchase the "assets, inventory, furniture and fixtures, stock or other property proposed to be sold, pledged or transferred...."

Fox continued to supply groceries to the rebuilt University Foodland from January 29, 1984, through March 1, 1986, when the store was closed by the Sellaros. On March 3, 1986, the industrial revenue bonds were paid and UFI gave Fox written notice of the termination of the lease, sublease, and franchise agreements. UFI then executed a lease with Peter J. Schmitt Co. and agreed to sell the equipment and inventory to Lawrence Mattar, Schmitt's agent. Fox, however, moved for a preliminary injunction on March 4, 1986, and a hearing was held before Judge Robert B. Stone on March 6, 1986. The motion for a preliminary injunction was denied.

On March 14, 1986, Fox informed UFI of its intention to exercise the right of first refusal option. Fox interpreted this option to include the inventory, equipment, furniture and fixtures, and other property, as well as the leasehold interest of UFI as an asset of the corporation. On March 25, 1986, UFI responded, offering to sell to

Fox the equipment and inventory on the same terms as those extended to Mattar in order to avoid litigation. Fox, however, maintained that the first refusal option included a right to a lease of the property. UFI refused, and viewed Fox's response as a rejection of its right under the first refusal option.

Thereafter, Fox filed a seven-count action, which included: (1) breach of contract; (2) tortious interference with a contractual relationship; (3) tortious interference with a business relationship; (4) conspiracy; (5) unjust enrichment; (6) violation of the West Virginia Antitrust Act; and (7) violation of the federal Racketeering Influenced and Corrupt Organizations Act (RICO) in Monongalia County Circuit Court. On April 16, 1987, Judge Starcher treated the motion to dismiss as a motion for summary judgment and granted summary judgment in favor of the defendant, UFI. This proceeding is the appellant's appeal from the summary judgment ruling.

Fox contends that the option clearly included a right of first refusal to lease the property and thus, summary judgment should not have been entered as a genuine issue of material fact existed. By contrast, UFI argues that the first refusal option is unambiguous, noting that since the option did not refer to a lease anywhere in its terms, the summary judgment was proper.

Consequently, the issue to be addressed on appeal is whether the rights granted under the first refusal option included a right to a leasehold interest in the property owned by UFI. For the reasons stated below, we hold that the first refusal option did not include a right to acquire a leasehold interest in the property and affirm the decision of the Monongalia County Circuit Court.

Rule 56(c) of the West Virginia Rules of Civil Procedure provides that a summary judgment will be entered

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We agree with the trial court's opinion that there is no genuine issue as to any material fact in this case. The facts are not in dispute. Rather, this appeal revolves around an interpretation of the first refusal option. In syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court interpreted Rule 56(c) to provide that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." [1]

This Court has held that "it is the province of the court and not of the jury, to interpret a written contract." *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550, 552 (1937). The disagreement of the parties to an action about the meaning of the language of an agreement does not necessarily mean that the agreement is ambiguous. *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40, 43 (1984). Rather, "[a] fundamental rule of law is that a court, in deciding disputes about the meaning of a contract, deed, or will, will endeavor to carry into effect the intent of the parties to the agreement, seeking first to ascertain such intent from the instrument itself." *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617, 618–19 (1981). In ascertaining the intent from the instrument, the language of the agreement must be afforded its "plain and ordinary meaning" without resort to judicial construction. Syl. pt. 4, *Williams v. South Penn Oil Co.*, 52 W.Va. 181, 43 S.E. 214 (1903); *see also, Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).[2]

---

**1.** *See also Spangler v. Fisher,* 152 W.Va. 141, 159 S.E.2d 903, 909 (1968), where the Court stated that if it appeared there was no genuine issue of material fact involved, it was the duty of the court to grant the motion.

**2.** *See also Bennett,* 166 W.Va. at 774, 277 S.E.2d at 619.

Turning to the first refusal option, we believe that the language of the option is free from ambiguity on the issue of whether it includes the right to a leasehold interest in the property.[3] The first refusal option provides:

before (1) any sale or transfer of all or substantially all of the assets of the food market business now owned by the undersigned ... under the name and style of University Foodland or (2) any sale or transfer in bulk of all or substantially all of the inventory or all or substantially all of the furniture and fixtures pertaining to said business, or (3) any sale, pledge or other transfer of stock in any corporation which now or in the future is the owner and/or operator of said food market business ... the undersigned will give to Fox, by registered mail ... written notice describing the assets, inventory, furniture and fixtures, stock or other property proposed to be sold, pledged or transferred and setting forth the proposed price, its proposed purchaser and the terms of payment thereof; and Fox, its successors or assigns, shall have the first option for a period of sixty (60) days after receipt of said notice exercisable by written notice mailed by registered mail to the undersigned ... to purchase said assets, inventory, furniture and fixtures, stock or other property proposed to be sold, pledged or transferred at the price and upon the terms designated in said sixty (60) day notice.

The option also provided that:

in the event of exercise of this option, the purchase shall be closed within the period of time set forth in the notice ... at which time such consideration as is then due shall be paid or delivered upon delivery to Fox or its nominee of bill of sale and other documents necessary in the opinion of legal counsel for Fox to vest good, clear and marketable title to the property which is the subject of the option in Fox, or its nominees.

It is important to note that nowhere in the option is the term "lease" mentioned. Rather, the option clearly refers to the right of Fox to "purchase said assets, inventory, furniture and fixtures, stock or other property...." The appellant was unable to provide any authority which would include a leasehold interest under any of the categories listed above. We also point out that the agreement requires that if Fox exercises the option, the consideration shall be paid "upon delivery to Fox or its nominee of bill of sale and other documents necessary in the opinion of legal counsel for Fox to *vest good, clear and marketable title to the property which is the subject of the option* in Fox...." The plain meaning of that language can only be that upon exercise of the option, Fox was to have good title to the assets subject to the option. It would be impossible for Fox to obtain clear, marketable title if it was merely leasing the property. The option was plainly intended to provide that only those assets of UFI that were to be sold were subject to the first refusal option. Consequently, we conclude that the first refusal option was not intended to encompass the right to acquire a leasehold interest in the property described above.

We acknowledge Fox's frustration in its desire to lease this property. However, both parties freely negotiated this agreement, which clearly requires that the exercise of the option result in a transfer of good title to the items sold. To interpret the option to include a leasehold interest in the property would impermissibly expand the scope of the option beyond its plain and ordinary meaning and force a business relationship where none was anticipated.

We, therefore, affirm the decision of the Monongalia County Circuit Court. We will not address the RICO and antitrust allegations in this case. The appellant admits that the deposition transcript, which it alleges contains the evidence of the charges, was not made part of the record before us.

---

**3.** "A valid written instrument which expressed the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation, but will be applied and enforced according to such intent." Sylla- bus point 1, *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962); *see also Columbia Gas Transmission Corp. v. E.I. duPont De Nemours & Co.,* 159 W.Va. 1, 217 S.E.2d 919 (1975).

We have no basis on which to consider those allegations and must, therefore, affirm the decision of the circuit court.

Affirmed.