412 S.E.2d 225

**TRI–STATE ASPHALT PRODUCTS, INC., Appellant,**

v.

**DRAVO CORPORATION, Appellee.**

**No. 19929.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1991.

Decided Dec. 6, 1991.

---

Richard A. Bush, Bush & Trippel, Parkersburg, for appellant.

John S. Bailey, Jr., Sara R. Simon, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, for the appellee.

PER CURIAM:

This contract dispute between Tri–State Asphalt Products, Inc., and Dravo Corporation resulted in the Circuit Court of Wood County's granting two summary judgments, one in favor of Tri–State on its

complaint ($34,091.86) and the other, in favor of Dravo on its counterclaim ($61,-166.35). On appeal, Tri–State contends that the summary judgment granted in favor of Dravo was in error because the parties' agreement was ambiguous and subject to differing interpretations. Because we do not find that the circuit court erred in deciding that the contract was unambiguous, we affirm the decision of the circuit court.

The current dispute arose out of the second of two buy-sell transactions involving three parties. The first transaction involved the purchase by Tri–State and sale by the McDonough Corporation of certain of the assets of the Ohio River Sand and Gravel Division of the McDonough Corporation. To accomplish the first transaction, Tri–State and McDonough executed two written agreements, a contract dated September 12, 1980 and a supplemental agreement dated December 29, 1980. *See Tri–State Asphalt Products, Inc. v. McDonough Co.*, 182 W.Va. 757, 391 S.E.2d 907 (1990) (hereinafter *Tri–State I*) for a discussion of the first transaction.

The second transaction, which is the subject of the present case, involved the subsequent purchase by Dravo and the sale by Tri–State of certain of the assets Tri–State had purchased from McDonough. To accomplish the second transaction, Tri–State and Dravo executed a written agreement dated December 29, 1980, which established January 5, 1981 as the closing date for the second transaction. Thus on December 29, 1980, Tri–State bought some assets and later that same day agreed to sell to Dravo part of the assets it had just bought.

In the current case, Tri–State appeals to this Court because of allegedly inconsistent holdings by the circuit court on the meaning of a crucial term, namely, "accrued vacation pay." [1] Tri–State contends that in *Tri–State I*, the circuit court found the term to be ambiguous, allowed the introduction of parol evidence and submitted the matter to the jury, which then returned a verdict favorable to McDonough. In the current case, Tri–State contends that a different judge in the same circuit determined the term to be clear and unambiguous, and by granting Dravo's motion for summary judgment, denied Tri–State a jury trial. According to Tri–State, the failure of the circuit court in the current case to find the term ambiguous and to submit the matter to a jury, resulted in inconsistent verdicts, both of which were unfavorable to Tri–State.

Tri–State is outraged because in its dispute with McDonough, it was the purchaser of assets and the assumer of liabilities, although in *Tri–State I* it argued that accrued vacation pay was not a liability that it was bound contractually to assume. Here, however, Tri–State is the seller of assets where the purchaser has assumed liabilities, one of which Tri–State argues is the exact same accrued vacation pay it argued unsuccessfully it had not assumed in *Tri–State I*. But, outrage of outrages, it is stuck again by a holding that it had not succeeded in passing this liability on to a subsequent purchaser.

**I**

Tri–State contends that because *Tri–State I* allowed the jury to determine the meaning of the contract, the circuit court in the second case should have also submitted the contract to a jury.[2] In Syllabus Point 2, *Conley v. Spillers*, 171 W.Va.

1. The calculations of "accrued vacation pay" are based on the two employees' contracts. One contract between a division of McDonough and the Operating Engineers, Local No. 132, provided that vacations are earned during one calendar year and are taken in the next calendar year, provided the employee has worked a minimum number of hours. The other contract between a division of McDonough and United Steelworkers of America, Local 2383, provided that vacations are earned on an anniversary year basis and are taken in the next anniversary year, provided the employee has worked a minimum number of hours.

2. Although there was no agreement directly involving Tri–State, Dravo and McDonough, the term "accrued vacation pay" is used in the supplemental agreement between Tri–State and McDonough (*Tri–State I, id.* 182 W.Va. at 762, 391 S.E.2d at 912) and in the contract between Tri–State and Dravo.

584, 301 S.E.2d 216 (1983), our landmark case on *res judicata* and collateral estoppel, we said:

> Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:
>
> > "But where the causes of action are not the same, the parties being identical or in privity, the bar extends to only those matters which were actually litigated in the former proceeding, as distinguished from those matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata*." *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965).

We also noted that "[t]he doctrine of collateral estoppel also requires as does *res judicata* that the first judgment be rendered on the merits and be a final judgment by a court having competent jurisdiction over the subject matter and the parties." Syllabus Point 2, *Conley, supra*.

■ Tri–State's argument for a limited application of collateral estoppel is without merit because *Tri–State I* did not find the term "accrued vacation pay" to be ambiguous.[3] In *Tri–State I*, the issue whether the supplemental agreement was ambiguous arose in Tri–State's allegation that the testimony of Joseph M. Brown was in violation of the parol evidence rule. *Tri–State I, supra* 182 W.Va. at 761–62, 391 S.E.2d at 911–12. After noting our parol evidence rule, we determined that Tri–State's assignment of error failed for two reasons:

> First, the trial judge did not find as a matter of law that the supplemental agreement was ambiguous. When the appellee questioned Mr. Brown regarding whether any adjustments were made to

the purchase price at the time of closing to pay for accrued vacations, the appellant objected on the basis of the parol evidence rule. The trial judge overruled the objection but made no ruling that the supplemental agreement was ambiguous on its face.

> Second, Mr. Brown was not attempting to explain the terms of the supplemental agreement. Instead, Mr. Brown was merely testifying that the appellee had complied with the agreement by deducting $50,000 from the contract price. (Footnotes omitted.)

*Tri–State I, id.* 182 W.Va. at 762, 391 S.E.2d at 912.

Because the circuit court in *Tri–State I* did not find that the supplemental agreement, which contained the term "accrued vacation pay" (*See supra*, note 3, for the pertinent provision of the supplemental agreement), to be ambiguous as a matter of law, there is no inconsistency when a subsequent decision also finds the term unambiguous. In *Tri–State I*, the jury verdict in favor of McDonough indicates that they believed Mr. Brown's testimony that "a '$50,000 agreement was struck' between the parties at the closing to compensate for any accrued hourly wages and vacations." *Tri–State I, id.* 182 W.Va. at 762, 391 S.E.2d at 912 n. 6.

■ Finally we noted that the offensive use of collateral estoppel is generally disfavored. In *Conley, supra* 171 W.Va. at 592–93, 301 S.E.2d at 223–24, we quoted the United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–331, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979):

> "Offensive use of collateral estoppel, on the other hand, creates precisely the opposite incentive. Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the

**3.** In *Tri–State I* the jury returned a verdict in favor of McDonough on two issues, workers' compensation deposits and the accrued vacation pay. *Tri–State I, supra* 182 W.Va. at 760, 391 S.E.2d at 910. The supplemental agreement, dated December 29, 1980, between Tri–State and

McDonough, did not address the workers' compensation deposits but did provide that the "[s]eller ... shall pay all accrued vacation pay due to said hourly employees through December 31, 1980." *Tri–State I, id.* 182 W.Va. at 762, 391 S.E.2d at 912 n. 5.

hope that the first action by another plaintiff will result in a favorable judgment. *E.g., Nevarov v. Caldwell,* 161 Cal.App.2d 762, 767–768, 327 P.2d 111, 115 [ (1958) ]; *Reardon v. Allen,* 88 N.J.Super. 560, 571–572, 213 A.2d 26, 32 [ (1965) ]. Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action.

\* \* \* \* \* \*

"... The general rule should be that in cases where a plaintiff could easily have joined in the earlier action ... a trial judge should not allow the use of offensive collateral estoppel." (Footnote omitted)

Because Tri–State's contention that in *Tri–State I* the circuit court had determined that the term "accrued vacation pay" was ambiguous was in error, the doctrine of collateral estoppel cannot be applied to require the submission of the matter to the jury in the present case.

## II

Having determined that submission to a jury is not required under the doctrine of collateral estoppel, we now examine the record to see if the parties' agreement of December 29, 1980 was ambiguous and, therefore, not subject to summary judgment.

Although both Tri–State and Dravo were granted summary judgment on their respective claims, the only issue before this Court concerns Dravo's counterclaim for $43,772, which Dravo paid for accrued vacations to the hourly employees who worked for the operations that Dravo acquired as a result of the agreement between Tri–State and Dravo.[4]

Each party before us now contends that the other party is liable for the accrued vacation pay under their December 29, 1980 agreement. Specifically the parties present different interpretations of the

agreement's sixteenth section, titled "Proration," which provides in pertinent part:

SIXTEENTH: *Proration.* As of the Closing Date, there shall be pro rated [sic] between Tri–State and Dravo all operating expenses of the Acquired Business, including but not limited to, ... (ii) payroll and fringe benefits, including accrued vacation, for all employees of the Acquired Business.... At the Closing, the parties shall estimate the amount of such operating expenses properly chargeable to Tri–State and such amount shall be credited against the purchase price or paid directly by Tri–State. In the event that such estimate is determined to be incorrect based on actual receipts and disbursements, Dravo shall pay to Tri–State the amount by which such estimate exceeds actual operating expenses, or Tri–State shall pay to Dravo the amount by which actual operating expenses exceeds such estimate.

Tri–State contends that this section of the agreement prorated the accrued vacations actually paid in 1981 between Tri–State and Dravo with Tri–State bearing the vacation costs *paid* before January 5, 1981, and Dravo bearing the vacation costs *paid* after January 5, 1981. (The agreement specified January 5, 1981 as the closing date.) However, Dravo contends that this section prorated the anticipated costs or expenses for the vacations that had accrued with Tri–State being responsible for all vacations costs that *accrued* before January 5, 1981 and with Dravo being responsible for the vacation costs that *accrued* after January 5, 1981. Dravo points out that the parties' agreement in the fifth section specifically limited the obligations that Dravo assumed by providing in pertinent part:

FIFTH: *Assumption by Dravo of Only Certain Specified, Identified Liabilities of Tri–State.*

1. Dravo shall assume the following obligations of Tri–State with respect to the Acquired Business and no others:

\* \* \* \* \* \*

---

4. Tri–State did not appeal the part of the summary judgment granted to Dravo for payments made by Dravo to certain "insured" or "pool"

workers, based on a separate agreement by the parties. Dravo did not appeal the summary judgment granted to Tri–State in its complaint.

(d) All liability of Tri–State accruing from and subsequent to the Closing Date under the contracts and agreements and arrangements described on Exhibit "D" hereto with respect to the individuals named on Exhibit "D", and as determined as set forth in paragraph 3 of Article THIRD hereof.

2. The liabilities and obligations described above in Paragraph 1 of this Article FIFTH, so and to the extent to be assumed by Dravo, are hereinafter referred to as the "Assumed Liabilities". Dravo shall not be deemed to and shall not assume any liabilities of Tri–State other than Assumed Liabilities.

In support of its interpretation, Dravo notes that under the supplemental agreement between Tri–State and McDonough, McDonough was to pay for the accrued vacations due through December 31, 1980.[5]

■ It is well-settled law that "[i]t is the province of the Court, and not of the jury, to interpret a written contract." Syl. Pt. 1, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937). *In accord*, Syllabus Point 1, *Orteza v. Monongalia County General Hospital*, 173 W.Va. 461, 318 S.E.2d 40 (1984); *Fox Grocery Co. v. University Foods, Inc.*, 181 W.Va. 206, 382 S.E.2d 43 (1989). We also have held that, "[w]here the terms of a contract are clear and unambiguous, they must be applied and not construed." Syllabus Point 2, *Bethlehem Mines Corp. v. Haden*, 153 W.Va. 721, 172 S.E.2d 126 (1969). *In accord*, Syllabus Point 2, *Orteza, supra;* Syllabus Point 1, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

■ Section five of the parties' agreement clearly limits Dravo's liability for employment contracts and, therefore, accrued vacation pay, to the liability of "Tri–State accruing from and subsequent to the Closing Date [January 5, 1981]". The only expenses that section sixteen of the parties' agreement could prorate as of January 5, 1981, were the expenses that *accrued* after December 31, 1980. Taken as a whole the parties' agreement clearly specifies that the only liability assumed by Dravo for accrued vacation pay was the liability accruing after January 5, 1981; any liability accruing before January 5, 1981 remained with Tri–State.

Under Tri–State's contract interpretation, section sixteen of the parties' agreement would require Dravo to pay not only for the vacations accruing when Dravo owned the business but also for the cost of vacations that had accrued when McDonough and Tri–State owned the business.

Additional support for Dravo's contract interpretation is found in the supplemental agreement between Tri–State and McDonough that specified that McDonough was to pay the costs of the accrued vacation through December 31, 1980.

In *Tri–State I,* we noted that the jury could have believed evidence that McDonough had discharged its obligation to pay accrued vacation costs by a $50,000 price adjustment. *Tri–State I, supra* 182 W.Va. at 762, 391 S.E.2d at 912. Given the result of *Tri–State I*, Tri–State's contract interpretation would result in a double payment to Tri–State for the accrued vacation costs, namely, the price reduction by McDonough and then payment by Dravo.

Finally we note that "[a]greements are not necessarily ambiguous because the parties disagree as to the meaning of the language of the agreement." *Orteza, supra* 173 W.Va. at 464, 318 S.E.2d at 43 (quoting *Richardson v. Econo–Travel Motor Hotel Corp.*, 553 F.Supp. 320 (E.D.Va. 1982)). *See also Fox Grocery, supra* 181 W.Va. at 208, 382 S.E.2d at 45.

When section sixteen, proration, is considered in the context of the rest of the parties' agreement, particularly section five, limitation of liability, the parties' agreement is unambiguous in requiring the proration of the expenses that accrued after December 31, 1980 and not the proration of the vacation costs actually paid in 1981. We find that the circuit court properly determined the parties' agreement to

---

5. *See infra* section I, for a discussion of the accrued vacation provision of the supplemental agreement between McDonough and Tri–State found in *Tri–State I.*

be unambiguous and then properly applied the terms of the agreement.

For the above-stated reasons, we affirm the decision of the Circuit Court of Wood County.

Affirmed.