Anthony James **BRAXTON**, Plaintiff,

v.

Michael L. **MATTHEWS**, Lt. L.G. Dodson, Cpl. Thomas B. Chabot, Lt. Robert Moore, In their individual and official capacities, and City of Charleston, Defendants.

Civ. A. No. 2:94–0273.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 19, 1994.

Rudolph L. DiTrapano and Debra L. Hamilton, DiTrapano & Jackson, Charleston, WV, for plaintiff.

Charles R. Bailey, Shuman, Annand & Poe, Charleston, WV, for defendant Matthews.

Steven P. McGowan, Jeffrey K. Phillips, Steptoe & Johnson, Charleston, WV, for defendant Dodson.

John R. Teare, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, WV, for defendants Chabot, Moore and City of Charleston.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant Thomas B. Chabot's motion for summary judgment. Plaintiff has responded and Defendant has replied. The matter is ripe for adjudication.

Plaintiff's complaint seeks damages for violations of his civil rights. Defendant, a member of the Charleston Police Department, is one of several police officers who participated in stopping Plaintiff's vehicle on April 8, 1994. Defendant's fellow officers searched Plaintiff's vehicle, allegedly discovering illegal drugs, and arrested Plaintiff. Plaintiff was later released from custody and charges against him were dropped.

Plaintiff contends Defendant's conduct in stopping his vehicle and questioning him, and in allowing fellow officers to search the vehicle and arrest him, violated his constitutional and civil rights. For support, Plaintiff cites the civil forfeiture proceedings pursued against his car by the State of West Virginia in the Circuit Court of Kanawha County, West Virginia and the ruling of that court:

> "[T]he police did not have sufficient reasonable suspicion of criminal activity by the driver to support a stop of the Respon-

dent vehicle, that the stop and subsequent investigation, search and arrest were unlawful and, thus, the Respondent vehicle was not seized pursuant to a lawful arrest." Plaintiff's Response to Defendant's Motion for Summary Judgment, Exhibit 4.[1]

## I.

### COLLATERAL ESTOPPEL

■ Plaintiff, on the one hand, contends the foregoing holding of the Circuit Court of Kanawha County acts to collaterally estop the Defendant from asserting the stop of Plaintiff's car, the subsequent search for and seizure of illegal drugs within the car, and Plaintiff's arrest, were legal. Defendant, on the other hand, asserts he is protected by "qualified immunity" from suit, and Plaintiff may not use collateral estoppel offensively against him.

When applying collateral estoppel law to a prior state court decision, federal courts apply the law of the adjudicating state. Title 28 U.S.C. § 1738 ("[J]udicial proceedings [of any State] shall have the same full faith and credit in every court within the United States … as they have by law or usage in the courts of such State … from which they are taken."). The law of West Virginia therefore applies to this case. The leading case concerning collateral estoppel in West Virginia is *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983). In *Syllabus* Point 2 of *Conley*, the Court held:

"Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit. We have made this summary of the doctrine of collateral estoppel:

'But where the causes of action are not the same, the parties being identical or in privity, the bar extends only to those matters which were actually litigated in the former proceeding, as distinguished from those

matters that might or could have been litigated therein, and arises by way of estoppel rather than by way of strict *res adjudicata.*' *Lane v. Williams*, 150 W.Va. 96, 100, 144 S.E.2d 234, 236 (1965)."

For collateral estoppel to apply, the first judgment must be a final judgment on the merits. *Syllabus* Point 3, *Conley, supra.*

The Supreme Court of Appeals of West Virginia has stated "that the offensive use of collateral estoppel is generally disfavored." *Tri–State Asphalt Products, Inc. v. Dravo Corp.*, 186 W.Va. 227, 230, 412 S.E.2d 225, 228 (1991), *citing, Conley v. Spillers, supra,* 171 W.Va. at 592–3, 301 S.E.2d at 223–4 (1983), *quoting, Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–1, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). The foregoing admonition is particularly applicable when the defending party was neither a party, nor privy to a party to the earlier action. If a plaintiff were permitted to use collateral estoppel offensively in such a situation, the defending party's constitutional due process rights might be ignored. As held in *Syllabus* Point 8 of *Conley v. Spillers, supra:* "A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim."

The civil forfeiture action was filed by the State of West Virginia against the Plaintiff's vehicle. Defendant did not instigate the forfeiture action, and clearly was not a party to the forfeiture proceeding Plaintiff relies upon for collateral estoppel purposes. Defendant had no interest, financial or otherwise, in the outcome of the forfeiture proceedings. The Defendant merely participated in stopping Plaintiff's vehicle. Moreover, Plaintiff acknowledges "[d]efendant Chabot was not actively involved in the civil forfeiture proceeding[.]" Plaintiff's Response to Defendant's Motion for Summary Judgment at 6. There is simply no evidence Defendant participated in any way in the forfeiture proceedings, let alone to have participated to such an extent

---

1. The state court's order is designated as "prepared by" plaintiff's then-counsel, and is signed by the state court judge.

to make him privy with the State of West Virginia.

Plaintiff here attempts to use collateral estoppel not as a shield, but as a sword. He seeks to preclude Defendant from asserting qualified immunity based upon the decision rendered in the state forfeiture proceeding. The Court concludes, however, that offensive use of collateral estoppel against the Defendant would violate his constitutional due process rights because he had no opportunity to litigate the claim. *Syllabus* Point 8, *Conley, supra.*

"The application of the doctrine of collateral estoppel is discretionary with the trial court[.]" *Syllabus* Point 7, in part, *Conley, supra.* In light of the foregoing, the Court concludes application of collateral estoppel against Defendant to be inappropriate.

## II.

### QUALIFIED IMMUNITY

Next, the Court must examine whether Defendant is protected from suit by the doctrine of qualified immunity. In *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir.1994) our Court of Appeals discussed generally the application of qualified immunity as follows:

"Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). 'In determining whether the specific right allegedly violated was "clearly established," the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged.' *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992) (citations omitted). Moreover, 'the manner in which this [clearly established] right applies to the actions of the official must also be apparent.' *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992) (*citing Tarantino v. Baker,* 825 F.2d 772, 774–75 (4th Cir.1987), *cert. denied,* 489 U.S. 1010, 109 S.Ct. 1117, 103

L.Ed.2d 180 (1989)), *cert. denied,* — U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993). As such, if there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity. *Tarantino,* 825 F.2d at 775."

The test for determining whether qualified immunity is available for a particular defendant is called an "objectively reasonable" one. *Shaw v. Stroud,* 13 F.3d 791, 801 (4th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24, *and cert. denied,* — U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994). Describing application of the "objectively reasonable" qualified immunity test to actions of police officers, our Court of Appeals has observed:

"[O]fficers are entitled to qualified immunity when they rely on standard operating procedures, if that reliance is reasonable. *Vizbaras v. Prieber,* 761 F.2d 1013, 1015 (4th Cir.1985), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 883, 88 L.Ed.2d 918 (1986). A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud, supra,* 13 F.3d at 801.

### A.

### THE INVESTIGATIVE STOP

■ Plaintiff contends Defendant violated his civil rights when he stopped Plaintiff's vehicle. Legally, to effect an investigative stop of a suspect in a criminal investigation, the officer stopping the suspect must have a "reasonable articulable suspicion." *See United States v. Harris,* 31 F.3d 153, 155 (4th Cir.1994) *citing, Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889 (1968). In the instant case, it is uncontroverted Defendant was driving a marked police car and stopped Plaintiff's vehicle. Plaintiff contends Defendant had no "reasonable articulable suspicion" to make the stop. The undisputed evidence shows the Defendant stopped Plaintiff's car because he was ordered to do so by superior officers who

witnessed what they believed to be a drug sale by the Plaintiff from his car. Defendant did not witness the alleged drug sale.

Although Plaintiff focuses heavily on the events witnessed by the Defendant's superiors that led to ordering the Defendant to stop Plaintiff's car, it is clear it is the conduct and belief *of the Defendant* that governs whether qualified immunity will apply to his actions. "A police officer is entitled to prevail on an assertion of qualified immunity if a reasonable officer possessing the same information would have believed his conduct was lawful. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991)." *Shaw v. Stroud, supra* at 801. Therefore, if Defendant reasonably believed his conduct was lawful when he stopped Plaintiff's car upon orders from his superiors, he is protected by qualified immunity for that conduct.

The Supreme Court has held police officers making an investigatory stop upon information received from other officers may have a "good-faith" defense to a civil action when they rely on the information received; this is so even where the information received was not the result of the informing officers' reasonable suspicion. *United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). Thus, even where the investigative stop itself violates the Fourth Amendment, the conduct of the stopping officer is not necessarily actionable. The *Hensley* Court cited with approval from *United States v. Robinson,* 536 F.2d 1298, 1299 (9th Cir.1976), stating: "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."

Defendant contends he initiated the investigatory stop of the Plaintiff based upon directions from other officers. Plaintiff has not presented any contrary motivation for Defendant's actions. The Court thus concludes Defendant's reliance upon the directions of other officers was in good faith, and that he reasonably believed the other officers had lawful reasons to direct him to make the investigatory stop. Accordingly, Defendant is protected by qualified immunity civil liability arising from his initiation of the investigatory stop. Defendant's motion for summary judgment [2] in regard to the investigatory stop is **GRANTED**.[3]

---

**2.** The standard used to determine whether a motion for summary judgment should be granted or denied was stated recently by our Court of Appeals:

"A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*" *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 24 *and cert. denied,* — U.S. ——, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994).

*Accord Riffe v. Magushi,* 859 F.Supp. 220, 226–27, n. 1 (S.D.W.Va.1994) (Haden, C.J.); *Thomas v. Shoney's Inc.,* 845 F.Supp. 388, 389–90 (S.D.W.Va.1994) (Haden C.J.).

**3.** Plaintiff also contends other "federal and state constitutional rights" were violated by the Defendant, but does not point to any evidence describing how those constitutional rights were allegedly violated. Because there has been no evidence presented showing Defendant did not act as an objectively reasonable police officer, summary judgment will be **GRANTED** for the Defendant on those claims as well.

## B.

### OTHER CLAIMS

Plaintiff asserts Defendant violated his constitutional rights when he (1) questioned Plaintiff during the investigatory stop; (2) undertook a search of Plaintiff's vehicle following the investigative stop; (3) arrested the Plaintiff; and (4) subjected the Plaintiff to a strip-body cavity search. The Court concludes Plaintiff's claims are meritless, and Defendant is entitled to summary judgment.

█ Regarding the questioning of the Plaintiff, Plaintiff testified Defendant repetitively asked him a series of fifty questions and he refused to answer.[4] It is unclear how Plaintiff's constitutional rights were violated. It seems more than objectively reasonable behavior for a police officer who has stopped a motorist to repeat questions to the motorist when the motorist refuses to answer. The interrogating procedure may be irritating without violating constitutional parameters.

█ Regarding the search of Plaintiff's car, Plaintiff acknowledges Defendant did not search the car but states, "it was not reasonable for him to stand idly by and allow the other officers present to intrusively enter the Plaintiff's vehicle and search [his] jacket[.]" Plaintiff's Memorandum in Opposition at 23. The Court disagrees. As stated by the Court of Appeals in *Taylor v. Farmer*, 13 F.3d 117, 121–22 (4th Cir.1993):

> "[Where a police] officers' conduct was governed by the … settled standards for the search of property and seizure of a suspect … those standards do not require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and the officers must be given leeway to draw reasonable conclusions from confusing and contradictory information, free of the apprehension that every mistaken search or seizure will present a triable issue of probable cause." (citation omitted).

Under the circumstances of this case, Defendant's conduct was objectively reasonable, and he is protected by qualified immunity again.

█ Finally regarding the arrest of the Plaintiff and the alleged strip-body cavity search, no evidence has been presented showing Defendant participated in either. The Court concludes Defendant's behavior, as shown by the deposition testimony and affidavits presented, was in all respects objectively reasonable. *Shaw v. Stroud, supra.* Defendant is entitled to qualified immunity on the claims against him, and summary judgment is hereby **GRANTED** on his behalf.

### III.

### CONCLUSION

Based upon the foregoing, Defendant's motion for summary judgment is **GRANTED**, and he is dismissed from this action.

---

4. In fact, even after the fifty questions were asked, Plaintiff testified in his deposition that he did not answer any questions, but merely asked Defendant a question. Plaintiff then alleges Defendant asked him thirty more questions, without Plaintiff responding.