W. L. STEPHENS *v.* HOWARD BARTLETT *et al.*

(No. 8467)

Submitted February 24, 1937. Decided March 23, 1937.

*Thos. P. Ryan* and *Wm. S. Ryan,* for plaintiffs in error.
*Grover F. Hedges,* for defendant in error.

MAXWELL, JUDGE:

This is a proceeding on motion for judgment by W. L. Stephens against Howard Bartlett and Sarah Mace, administratrix of the personal estate of Van Mace, deceased. On writ of error there is presented for review a judgment for $783.88, on verdict, in favor of the plaintiff and against the defendants. A new provision of statute, Code 55-8-8, makes it possible, in an action on contract, to join as defendant with a living obligor the personal representative of a deceased obligor. Prior to the enactment of said statute this could not be done. I Barton's Law Practice (2d Ed.), p. 144; IV Minor's Institutes (3d Ed.), p. 447.

The action is based on a written contract dated July 10, 1933, between W. L. Stephens, party of the first part, and Howard Bartlett and Van Mace, parties of the second part. The contract was for the drilling of a well for oil and gas purposes on a lease owned by Bartlett and Mace. The contract provided that for services rendered and materials furnished by Stephens in the drilling of the well, he should be paid $2400.00, and assigned an undivided 8/32 of the working interest in the lease. The lessees were "stocking out" the working interest in the lease at the price of $130.00 for each 1/32. The contract carries a provision that the six and five-eights inch casing required to be used in the drilling of the well should be furnished by Stephens; further, if the well should prove to be a producer of oil or gas, the said casing should be purchased of Stephens by Bartlett and Mace at the price of fifty cents per lineal foot. No provision was made for the purchase of the casing by the lessees if the well should be non-productive, evidently because, in that event, they would not need the casing.

In pursuance of the contract, Stephens drilled the well. When the time arrived for the six and five-eighths inch casing to be inserted into the well under the established method in the course of drilling, Stephens brought to the well for the purpose of using therein some casing which Mace thought was too light. Thereupon, heavier casing was obtained from Max Baren, a dealer in oil and gas well supplies at Parkersburg. The sale price charged by Baren for the casing was $1029.15. Baren seemed to have some doubt about the financial strength of Stephens, therefore, on Baren's books of account, a charge for the casing was entered against Bartlett and Mace, though Baren, at the trial, testified that Mace told him the casing was to be used by Stephens and should be charged to him. The casing was acquired from Baren under a trade custom whereby, if a well for which casing is procured and wherein it is used proves to be a "dry hole", the casing may be returned to the dealer and a rental paid him for the use thereof, otherwise the full sale price is to be paid. Bartlett and Mace paid Baren $300.00 on ac-

count of the casing, leaving $729.15 due Baren, and credited themselves with $300.00 against the $2400.00 which the contract provided they should pay Stephens. When the well, on completion, proved non-productive, the six and five-eighths inch casing was pulled therefrom. Soon thereafter, Mace sold the casing to W. B. Heater for $829.15, being the full amount of the balance owing Baren, plus $100.00 profit to Mace. At about the same time, Stephens negotiated a sale of the casing to Guy Boggess for $1,029.15, being the original cost of the casing. But Boggess did not get the casing; it was hauled away by Heater.

The plaintiff takes the position that though Bartlett and Mace assisted him in obtaining the six and five-eighths inch casing from the Parkersburg dealer, the casing was bought for him and was under his control; that after it was pulled from the well, it remained his property; that because of the wrongful sale thereof by Mace (who at that time seems to have succeeded to the rights of Bartlett) the plaintiff was deprived of the opportunity of selling the casing to Boggess and thereby obtaining funds to discharge the Baren account; and that by reason of all of which he should recover from Bartlett and Mace the said sum of $300.00, with interest.

The defendants say that the plaintiff's claim in respect of the item of $300.00 is in reality a matter *ex delicto* and cannot be litigated in this action on contract. To that position, a full answer seems to lie in the familiar concept that in such circumstances as the one here presented a party claiming to have been injured may waive the tort and sue on contract. Also, it is to be noted, the suggestion of tort was injected into this case by the defendants and not by the plaintiff. He filed his bill of particulars showing that of the contract sum of $2400.-00 he had been paid only $1710.00, leaving a balance of $690.00 for which he sued. When the defendants presented the contention that they bought and owned the casing and had a right to do with it as they pleased, and therefore properly charged against the plaintiff the sum of $300.00 as rental, he was forced to develop his side

of that element of the controversy.

Defendants also complain of certain statements of the court in the course of the trial before the jury. The rulings of the judge, objected to, bear on the contractual rights of the parties concerning the casing. Following an argument of counsel, respecting the proper interpretation of the contract, the court stated in the presence of the jury: "Under the terms of this contract, Stephens had the control of this pipe and he was the only man that could sell it. He agreed to furnish the pipe in the first instance, and it was his pipe, and if it was a dry hole, it was still his pipe. He didn't furnish it, but they furnished it for him. The question for the jury is to determine to what extent those who furnished the pipe should have credit on the whole contract. * * * Stephens had a right to sell the pipe and reimburse himself. To the extent they helped him to furnish it, they are entitled to their money back. That would be for the jury to determine from all the evidence, whether there was any balance there going to Stephens, and, if so, how much. The court indicates no opinion as to what the evidence would show about that. That would be wholly, of course, for the jury." We perceive no error in the court's ruling. The court was directing its attention to a legal question presented, namely, the ownership of the casing under the terms of the contract. "It is the province of the court, and not of the jury, to interpret a written contract." *Franklin* v. *Lumber Co.*, 66 W. Va. 164, 66 S. E. 225. Consult, I Thompson on Trials (2d Ed.), sec. 1065 *et seq.* In the court's interpretation we concur because the contract placed on Stephens the obligation of furnishing the six and five-eighths inch casing. It is not material from whom he acquired it, or whether by borrowing, leasing or buying. The fact that the defendants assisted the plaintiff in obtaining the casing in nowise changes the plain meaning of the contract. So, we find no error in the record respecting the $300.00 item hereinabove discussed. The jury properly found for the plaintiff respecting this item.

Thus, there is accounted for somewhat less than one-

half of the difference between the $1710.00 paid the plaintiff by the defendants and the full contract amount of $2400.00. To justify their failure to pay the remainder of the amount claimed by plaintiff, the defendants assert that after the execution of the contract and while the well was in process of drilling, the plaintiff contracted with Bartlett and Mace to take additional shares in the working interest in the said well, namely, three thirty-seconds, at the price of $390.00. Defendant Bartlett testified that this supplemental arrangement was made between him and Stephens, and that with the consent and approval of Stephens, he altered the original contract in conformity with the alleged supplemental undertaking. All of this was categorically denied by Stephens. He testified that he was importuned by Bartlett and Mace to purchase additional shares in the well but that he persistently declined to do so. There was thus presented an irreconcilable conflict of testimony on an issue of fact—a problem peculiarly appropriate for jury determination. "This Court will not disturb the verdict of a jury, founded on conflicting testimony approved by the trial court, unless the evidence, as a whole, clearly and plainly preponderates against such verdict." *Sisler* v. *Shaffer*, 43 W. Va. 769, 28 S. E. 721. There is no basis on which this court could with propriety interfere with the jury's finding respecting this controversial item.

Perceiving no error in the record, we affirm the judgment.

*Affirmed.*