No. 23-522 – *Francis Kaess v. BB Land, LLC*

Justice Trump, concurring:

**FILED**

**June 6, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

While I concur in the majority opinion's answers to the certified questions in this case, I write separately to explain the basis of my judgment.

An "in-kind royalty" is one which is paid by lessee's delivery to the lessor of the lessor's share of the actual oil or gas produced under the lease, as opposed to a percentage of the proceeds from the sale of the oil or gas produced. A lessor receives an "in-kind royalty" when he or she receives and takes possession of the lessor's share of the actual oil or gas extracted. *See* Daniel M. McClure, *Developments in Oil and Gas Glass Action Litigation*, 52 Inst. on Oil & Gas L. & Tax'n § 3.06[1][a] at 3-24 (2001) ("Under an 'in kind' royalty clause, the lessor is entitled to receive a share of the lessee's actual production: in other words, the lessor is entitled to receive its royalty in the form of oil or gas rather than money.").

With regard to whether there is an implied duty to market in in-kind oil and gas leases, I agree with the majority that the answer to the first certified question is "yes." A quarter of a century ago, in the case of *Wellman v. Energy Resources, Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001), addressing a lessee's duty to market the oil and gas produced, this Court said, "Like those states [Colorado, Kansas, and Oklahoma], West Virginia holds that a lessee impliedly covenants that he will market oil or gas produced." *Id*. at 211, 557

1

S.E.2d at 265. As has been pointed out by my colleagues, the lease at issue in *Wellman* was a proceeds royalty lease. We are now asked by the district court to answer whether our law is different for "leases containing an in-kind royalty provision" than it is for proceeds leases. I think not.

Certainly, in a situation where the lessor is actually receiving his royalty in-kind, by physically taking his proportionate share of the actual oil or gas produced, then it is obvious that the lessee/producer has no implied duty to market the lessor's share. In that scenario, the lessor will be doing with his or her share of the actual oil or gas produced that which the lessor desires to do with it, and the lessor is not relying on the lessee/producer to market or sell the same; accordingly, the lessee has no duty to do so. But as happens in many cases, including the case from which our certified questions arise, even when a lease may contain "in-kind royalty provisions," the lessor does not always receive his or her share "in-kind."[1] Under our law, what happens then?

Interestingly, even though my colleagues reach opposite conclusions on the answer to this first certified question, they both cite Byron C. Keeling, *Fundamentals of Oil and Gas Royalty Calculation*, 54 St. Mary's L.J. 705 (2023), which discusses what the options are when the lessor under an in-kind lease does not physically take his or her share

---

[1] The dissent correctly recognizes that, "Obviously, not all royalty owners have the infrastructure (wells or tanks or pipelines) to store and market their on-eighth share of the oil and gas produced."

of the oil and gas. The options, according to Keeling, include: (1) delivering the lessor's share to a third party with whom the lessor has made an agreement; (2) the lessee buying the oil or gas from the lessor upon terms to which the parties have agreed; or

> (3) [I]f the producer does not either buy the royalty owner's share of the production or deliver the royalty owner's share of the production to a purchaser free of cost, then *under the implied marketing covenant, the producer must market and sell the royalty owner's share of the production – on the royalty owner's behalf* – along with the producer's own share of the production.

*Id.* at 711-12 (emphasis added).

Unquestionably, at least since our decision in *Wellman*,[2] our law has recognized an implied duty on the part of the lessee to market the oil and gas produced under a proceeds lease. I can see no reason for our law to chart an opposite course for "leases containing an in-kind royalty provision" – unless the parties' agreement specifies otherwise. In other words, unless there is something in the parties' agreement that specifically negates or cancels the lessor's implied duty to market when the lessor's share is not delivered in kind, sold to a third party, or purchased by the lessee, then an implied duty of the lessee to market applies. Thus, I believe it is important and correct that our new syllabus point answering the first certified question recognizes the constitutional right of

---

[2] This Court reaffirmed its decision in *Wellman* as recently as three years ago in *SWN Prod. Co., LLC v. Kellam*, 247 W. Va. 78, 875 S.E.2d 216 (2022).

the parties to govern their own relationship by entering into leases that delineate their respective rights and obligations.

Similarly, I agree that the answer to the second certified question is also "yes," again, subject to the right of the parties to an oil and gas lease to be free to agree upon and include terms and provisions within their leases specifically canceling or negating the lessee's implied duty to market the oil and gas produced or, as relates specifically to post-production expenses, allocating those expenses between the lessee and the lessor in any manner upon which the parties may agree.

In addressing the allocation of post-production expenses in *Estate of Tawney*, this Court reaffirmed Syllabus Point 4 from *Wellman*:

> If an oil and gas lease provides for a royalty based on proceeds received by the lessee, *unless the lease provides otherwise*, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale.

Syl. Pt. 1, *Estate of Tawney*, 219 W. Va. at 267, 633 S.E.2d at 23 *citing* Syl. Pt. 4, *Wellman*, 210 W. Va. 200, 557 S.E.2d 254 (2001) (emphasis added).

The Court issued a new syllabus point in *Estate of Tawney*, as follows:

> Language in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of sale must expressly provide that the lessor shall bear some part of the

4

costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty (usually 1/8), and indicate the method of calculating the amount to be deducted from the royalty for such post-production costs.

Syl. Pt. 10, *Estate of Tawney*, 219 W. Va. at 268, 633 S.E.2d at 24.

Because the default rule that the lessee must bear the costs of getting the product ready for sale and getting the product to market (in the absence of contractual terms specifying otherwise) flows from the lessee's implied duty to market, a duty which, as I have said above, I believe applies also with respect to "leases containing an in-kind royalty provision," I believe that the requirements for the deductions of post-production expenses from *Wellman* and *Estate of Tawney* apply to leases containing an in-kind royalty provision. Accordingly, I concur that the answer the second certified question is "yes."

The dissent in this case provides an excellent discussion of our many cases holding that the courts have no power or authority to rewrite contracts that have been validly made between persons with legal capacity to make them. The dissent's treatment of that subject is such that little further discussion by me is necessary, except to reinforce that so important is the freedom to enter into contracts and to have them be recognized and enforced in our courts that in drafting the United States Constitution, the founders prohibited the states from having or exercising any power to impair contracts. "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ." U.S. CONST. art I, §10. The West Virginia Constitution contains a similar prohibition. *See* W. VA. CONST. art.

5

III, §4 ("No . . . law impairing the obligation of a contract, shall be passed."). I agree that this fundamental principle states a core freedom.

I do not agree, however, that this Court has rewritten leases, as the dissenting opinion posits. This Court, as well as courts throughout America, have been called upon innumerable times to interpret and answer questions regarding the meaning of oil and gas leases in the context of the rights and obligations of the parties to them. With respect to oil and gas leases, the frequency and volume of cases in which questions of interpretation of the contracts have been presented to the courts is nothing less than extraordinary.[3]

---

[3] *See e.g. Wellman v. Energy Res., Inc.*, 210 W. Va. 200, 557 S.E.2d 254 (2001); *Est. of Tawney v. Columbia Natural Res., LLC*, 219 W. Va. 266, 633 S.E.2d 22 (2006); *Leggett v. EQT Prod. Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017); *SWN Prod. Co., LLC v. Kellem*, 247 W. Va. 78, 875 S.E.2d 216 (2022). Not only in West Virginia are courts being called upon to answer these questions. *See e.g. Jones v. Bronco Oil & Gas Co.*, 446 So.2d 611 (Ala. 1984); *Hillard v. Stephens*, 637 S.W.2d 581 (Ark. 1982); *Vedder Petroleum Corp. v. Lambert Land Co.,* 122 P.2d 600 (Cal. 1942); *Rogers v. Westerman Farm Co.*, 29 P.3d 887 (Co. 2001); *Minerva Oil Co. v. Sohio Petroleum Co.*, 84 N.E.2d 167 (Ill. App. Ct. 1949); *Fawcett v. Oil Prod., Inc. of Kansas*, 352 P.3d 1032 (Kan. 2015); *Baker v. Magnum Hunter Prod., Inc.*, 473 S.W.3d 588 (Ky. 2015); *Henry v. Ballard & Cordell Corp.*, 418 So.2d 1334 (La. 1982); *Schroeder v. Terra Energy, Ltd.*, 565 N.W.2d 887 (Mich. App. Ct. 1997); *Pursue Energy Corp. v. Abernathy*, 77 So.3d 1094 (Miss. 2011); *Montana Power Co. v. Kravik*, 586 P.2d 298 (Mont. 1978); *Libby v. De Baca*, 179 P.2d 263 (N.M. 1947); *West v. Alpar Res., Inc.*, 28 N.W.2d 484 (N.D. 1980); *Lutz v. Chesapeake Appalachia, LLC*, 71 N.E.3d 1010 (Ohio 2016); *Mittelstaedt v. Santa Fe Minerals, Inc.*, 954 P.2d 1203 (Okla. 1998); *Kilmer v. Elexco Land Serv., Inc.*, 990 A.2d 1147 (Pa. 2010); *Nettye Englar Energy, LP v. BlueStone Nat. Res. II*, LLC, 639 S.W.3d 682 (Tex. 2022); *Emery Res. Holdings, LLC v. Coastal Plains Energy*, 915 F.Supp.2d 1231 (D. Utah 2012); *Cabot Oil & Gas Corp. v. Followill*, 93 P.3d 238 (Wyo. 2004).

The heavy volume of litigation in this area is the consequence of a combination of several things, which I think may be fairly identified as follows: (1) old (sometimes ancient) contracts (oil and gas leases), the express terms and provisions of which simply do not specifically or clearly address, much less answer, the questions confronting the parties who are bound by them; (2) changes in the law which have altered over time the manner in which oil and gas are produced, transported, refined, separated, marketed, and sold, including deregulation of the oil and gas industry under the federal Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. §§ 3301-3432 (1982), and Order 636 issued by the Federal Energy Regulatory Commission ("FERC") in 1992; and (3) changes in technology and methods of production, which have also driven upheaval in the manner in which oil and gas are produced, transported, refined, separated, marketed, and sold.

Parties to oil and gas leases that were made sometimes generations ago, well before the massive changes that have come to the oil and gas industry, have struggled and disagreed upon how these agreements are to be construed and interpreted. The parties have, as they have every right to do, asked this Court and other courts throughout America to render judgment in the interpretation and construction of these instruments. Is a lessee/producer entitled or permitted by the contract to deduct from the royalty payments it must make to the lessor a share of the post-production expenses that it has incurred in bringing the product to sale? In many cases with which the courts have grappled, the leases themselves provide no clear answer. Lessors/mineral owners have contended that their

leases do not expressly authorize such deductions. Lessees/producers have contended that their leases do not expressly prohibit such deductions. Both have been correct.

This Court and other courts have been called upon to answer these questions in the context of agreements which do not themselves provide specific or clear answers. The rule of contract interpretation this Court issued in Syllabus Point 4 of *Wellman*, quoted above, preserves and honors the right of the parties to negotiate and incorporate their own specific terms and provisions into an oil and gas lease ("unless the lease provides otherwise"), but provides for a default rule of construction in the absence of specific terms and provisions addressing the question. Consistent with *Wellman*, Syllabus Point 10 in *Estate of Tawney*, quoted above, requires the lease to delineate "with particularity the specific deductions" to be taken from the lessor's royalty.[4]

I do not agree that any of this amounts to rewriting contracts. Rather, I believe that this Court has done that which courts must do when called upon by parties to a contract, and that is render its judgment for the parties on what the contract means and requires. *See e.g.* Syl. Pt. 1, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937) ("It is the province of the [c]ourt, and not of the jury, to interpret a written contract."); Syl. Pt. 1, in part, *Berkeley County Pub. Serv. Dist. v. Vitro Corp.*, 152 W. Va. 252, 162 S.E.2d 189 (1968)

---

[4] As noted above, this Court has reaffirmed the principal holdings of *Wellman* and *Estate of Tawney* in the recent case of *SWN Prod. Co., LLC v. Kellam*, 247 W. Va. 78, 875 S.E.2d 216, (2022).

("The question as to whether a contract is ambiguous is a question of law to be determined by the court.").

For these reasons, I respectfully concur with the majority's opinion in this case.[5]

---

[5] There is one area of the majority opinion with which I do not agree, even though I concur with the majority opinion's ultimate answers to the district court's certified questions. The majority opinion places some reliance upon the history surrounding this Court's decision in the case of *Leggett v. EQT Production Co.*, 239 W. Va. 264, 800 S.E.2d 850 (2017) and the subsequent amendment by the Legislature in 2018 of West Virginia Code § 22-6-8, all relating to our law's treatment of "flat-rate" leases. I do not find that consideration of either *Leggett* or the provisions of West Virginia Code § 22-6-8 is necessary to answer the questions that the district court has requested this Court to answer. In my view, our law's treatment of "flat-rate" leases is something quite separate from and unrelated to the questions before us now.