# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Spring 2026 Term

_____

No. 25-ICA-213

_____

**FILED**

**June 11, 2026**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

HOMESITE INSURANCE COMPANY OF FLORIDA,
Plaintiff Below, Petitioner,

v.

ZURICH AMERICAN INSURANCE COMPANY and
J.F. ALLEN COMPANY, INC.,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Upshur County, West Virginia
Honorable Jacob E. Reger, Judge
Civil Action No. CC-49-2024-C-16

AFFIRMED

_____

Submitted:  January 13, 2026
Filed:  June 11, 2026

Don C.A. Parker, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Petitioner Homesite
Insurance Company of Florida

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
Pullin, Fowler, Flanagan, Brown & Poe
Huntington, West Virginia
Counsel for Respondent Zurich American
Insurance Company

Rebecca D. Pomeroy, Esq.
Christopher D. Smith, Esq.
Bailey & Glasser, LLP
Charleston, West Virginia
Counsel for Respondent J.F. Allen

_____

AND

_____

No. 25-ICA-216

_____

ZURICH AMERICAN INSURANCE COMPANY,
Defendant Below, Petitioner,

v.

HOMESITE INSURANCE COMPANY OF FLORIDA,
Plaintiff Below, Respondent, and

J.F. ALLEN COMPANY, INC.,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Upshur County, West Virginia
Honorable Jacob E. Reger, Judge
Civil Action No. CC-49-2024-C-16

AFFIRMED

_____

Submitted: January 13, 2026
Filed: June 11, 2026

Tiffany R. Durst, Esq.
Nathaniel D. Griffith, Esq.
Pullin, Fowler, Flanagan, Brown & Poe
Huntington, West Virginia
Counsel for Petitioner Zurich American
Insurance Company

Don C. A. Parker, Esq.
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Counsel for Respondent Homesite
Insurance Company of Florida

Rebecca D. Pomeroy, Esq.
Christopher D. Smith, Esq.
Bailey & Glasser, LLP
Charleston, WV
Counsel for Respondent J.F. Allen

CHIEF JUDGE GREEAR delivered the Opinion of the Court.

GREEAR, Chief Judge:

Petitioner Homesite Insurance Company of Florida ("Homesite") appeals the Circuit Court of Upshur County's April 25, 2025, Order denying Homesite's motion for summary judgment and awarding summary judgment to Respondent J.F. Allen Company, Inc. ("Allen") in a declaratory judgment action as to the applicability of certain insurance coverage for claims brought against Allen by Debra Green, Executrix of the Estate of Larry R. Green, deceased ("Green Estate"). Respondent Zurich American Insurance Company ("Zurich") separately appeals the circuit court's April 25, 2025, Order, in which the court also denied Zurich's motion for summary judgment in the underlying declaratory judgment action and awarded summary judgment to Allen. As these appeals both relate to available insurance coverage for claims arising from the same motor vehicle accident, as addressed below in the same Order, and involve similar issues on appeal, on its own motion, this Court consolidates the appeals in 25-ICA-213 and 25-ICA-216, for resolution.[1]

On appeal, Homesite argues that the circuit court erred in determining that an exclusion within its policy of insurance does not preclude coverage for Allen as to the claims asserted against it in a civil action brought by the Green Estate. Similarly, Zurich

---

[1] 25-ICA-213 relates to Homesite's appeal of the circuit court's award of summary judgment to Allen. 25-ICA-216 relates to Zurich's appeal of the circuit court's award of summary judgment to Allen. For purposes of clarification, we will refer to Homesite as Petitioner in this case even when discussing the claims advanced by Zurich in its appeal.

1

argues, on appeal, that the circuit court erred in finding that the Zurich Auto Policy extends to provide coverage for the negligent hiring/retention claim brought by the Green Estate against Allen. Based upon our review of the record, the written and oral arguments of counsel, and applicable law, we find no error in the circuit court's order awarding summary judgment to Allen in both the Zurich and Homesite insurance coverage disputes. Here the circuit court looked specifically at the language of each applicable policy provision and determined, based upon its reading of such language, that coverage for the Green Estate's negligent hiring/retention claims against Allen existed under both the Zurich and Homesite policies.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The underlying litigation stems from an April 20, 2022, motor vehicle accident that occurred on Route 20 in Buckhannon, Upshur County, West Virginia, wherein a dump truck driven by Richard Marple, and owned by Nu Creek, LLC ("Nu Creek"),[2] struck a vehicle operated by Larry R. Green. At the time of the April 20, 2022, accident, Nu Creek was operating its truck under an independent contractor agreement with Allen, wherein Nu Creek hauled "cargo for-hire on the public roadways of the State of West Virginia" for Allen. It is alleged that the subject accident occurred as Mr. Marple was traveling to a quarry "to pick up a load" and was "driving too fast and lost control" of his

---

[2] At the time of the subject accident, Nu Creek was a registered motor carrier with the Federal Motor Carrier Safety Administration and held United States Department of Transportation ("USDOT") No. 3057976.

vehicle, causing his vehicle to enter the lane of travel of Mr. Green's vehicle and strike the same, thereby causing Mr. Green's death.

On October 27, 2022, the Green Estate filed a lawsuit in the Circuit Court of Harrison County, West Virginia, styled *Debra Green v. Nu Creek, LLC; J. F. Allen Company; and Richard A. Marple*, Civil Action No. 22-C-199-3. In its complaint, the Green Estate asserted a wrongful death action against Mr. Marple, and further alleged that Mr. Marple had been involved in a previous fatal motor vehicle accident on December 5, 2016, while operating a dump truck for a business he then owned, known as Hackers Creek Enterprises ("HCE"). The Green Estate suggested that, after the 2016 accident, HCE's USDOT number was either voluntarily or involuntarily withdrawn or revoked, and, in an effort to start over with a clean record, Mr. Marple then formed Nu Creek. The Green Estate described Nu Creek as a "chameleon carrier," which it defined as a "motor carrier who closes one trucking company and subsequently forms a new trucking company with a different name to avoid facing penalties and paying fines that were incurred by the old company."

In Count IV of its complaint, the Green Estate alleged that Allen violated its duty to conduct a reasonable investigation into the background of Nu Creek and Mr. Marple as to their fitness to act as a motor carrier on public roadways prior to retaining Nu Creek and Mr. Marple to operate as a contractor to haul cargo for Allen. The Green Estate suggested that had a reasonable background investigation been completed that Allen would

3

have discovered that Nu Creek "was an illegal chameleon carrier" and Mr. Marple "was unfit to safely operate a commercial motor vehicle."

At the time of the April 20, 2022, accident, Allen had two "towers" of insurance coverage comprised of multiple insurance carriers and multiple insurance policies, including a mix of auto, commercial general liability ("CGL"), and excess policies. Important to the instant case are four policies of insurance, each with the effective dates of April 1, 2022, to April 1, 2023: Zurich Auto Policy No. BAP 5098870-13 ("Zurich Auto Policy"); Zurich Commercial General Liability Policy No. GLO 5098869-13 ("Zurich CGL Policy"); Axis Surplus Insurance Company ("Axis") Policy No. P-001-000124611-04 ("Axis Policy"); and Homesite Policy No. CXP-7558082-01 ("Homesite Policy"). The Axis Policy was described as an excess policy, with the Homesite Policy (also an excess policy) triggered upon exhaustion of the Axis Policy.

On December 26, 2023, Allen received a letter from Axis wherein Axis reserved its right to deny insurance coverage to Allen under the Axis Policy pursuant to an auto liability exclusion within said policy.[3] In early January of 2024, a mediation occurred in the civil case brought by the Green Estate, which was unsuccessful. Following that mediation, Allen wrote to Axis to ask that it withdraw its December 26, 2023, reservation

---

[3] While reserving the right to deny coverage under its policy, Axis did not formally deny coverage to Allen. In fact, during subsequent settlement negotiations, Axis tendered the limits of its policy in settlement of the claims of the Green Estate.

of rights. Axis declined to withdraw its coverage position. On January 24, 2024, Allen received a letter from Homesite similar to Axis' December 26, 2023, letter. In the January 24, 2024, letter, Homesite argued that as the claims brought by the Green Estate involved the use of an auto, the automobile liability exclusion was triggered and coverage to Allen was precluded.

In early February of 2024, Allen requested that each of its insurance carriers "take the necessary actions to protect [Allen's] interests" in the case brought by the Green Estate, and reminded the carriers of "the risk of a potential excess verdict." The following day, Allen made "specific requests" to Homesite and Zurich "to resolve the claims" brought by the Green Estate.

Thereafter, on February 13, 2024, Homesite filed the underlying Declaratory Judgment Complaint, seeking the court's declaration that there was no liability insurance coverage under the Homesite Policy for Allen as to the lawsuit brought by the Green Estate. Further, Homesite asked the court to declare that both the Zurich Auto Policy and Zurich CGL Policy provided liability insurance coverage to Allen as to the claims brought by the Green Estate. In response, on March 22, 2024, Allen filed its answer to Homesite's complaint and raised a counterclaim against Homesite and crossclaim against Zurich, each seeking declaratory relief and alleging breach of contract and breach of the implied

5

covenant of good faith and fair dealing.[4] On October 4, 2024, Zurich filed its answer to Homesite's declaratory judgment complaint and denied that its Auto Policy afforded coverage to Allen for the lawsuit brought by the Green Estate.

At a second mediation on March 4, 2024, the claims of the Green Estate were settled. During settlement negotiations, Zurich tendered its policy limits for its CGL policy and Axis tendered the limits of its excess policy. However, given the coverage positions advanced by Homesite and Zurich (as to the Zurich Auto Policy), as part of the confidential settlement of the claims of the Green Estate, Allen "had to commit to paying its own funds over" those paid under the Zurich CGL Policy and the Axis Policy "in order to resolve the case."

From October through December of 2024, Homesite, Zurich, and Allen filed competing motions for summary judgment on the underlying declaratory judgment claims. Oral argument on said motions was held before the circuit court on March 25, 2025. On April 25, 2025, the court entered its Order denying Homesite and Zurich's motions for summary judgment and finding in favor of Allen. Specifically, the court reasoned that the auto exclusion relied upon by Homesite does not preclude coverage to Allen for the claims

_____

[4] Pursuant to the circuit court's October 17, 2024, Order Establishing Briefing Scheduling Regarding Early Dispositive Motions on Insurance Coverage Issues, the parties agreed to brief only "insurance coverage issues." Accordingly, Allen's claims for breach of contract and breach of the implied covenant of good faith and fair dealing were informally stayed pending resolution of the instant declaratory judgment claims.

asserted against it by the Green Estate. Citing the Supreme Court of Appeals of West Virginia's ("SCAWV") decision in *Huggins v. Tri-County Bonding Co.*, 175 W. Va. 643, 337 S.E.2d 12 (1985), the circuit court concluded that "[b]ecause the Homesite auto exclusion focuses on the nature of the claim rather than bodily injury, the exclusion was not triggered" by the Green Estate's claims against Homesite and "therefore, is not a bar to insurance coverage" for Allen.

As to the Zurich Auto Policy, the court found that the insuring agreement focuses exclusively on "bodily injury . . . caused by an 'accident' and resulting from . . . use of a covered 'auto.'"[5] The court reasoned that while the Green Estate's claims against Allen were for negligent hiring/retention, the liability of Allen was tied to "bodily injury" caused by an auto accident, as opposed to the insured's conduct. Accordingly, the court concluded that the Zurich Auto Policy provided coverage to Allen as to the claims alleged against it by the Green Estate.

Additionally, within the April 25, 2025, Order, the circuit court concluded that "regardless of its ruling on the applicable policy provisions, the [Zurich Auto Policy and Homesite Policy] are ambiguous given [the] competing interpretations asserted by the

---

[5] The circuit court concluded, and the parties do not dispute, that within the scope of the Zurich Auto Policy, the term "covered auto" is defined as "any auto" and would include an auto driven by a third party, such as Nu Creek or Mr. Marple.

parties." It is from the circuit court's April 25, 2025, Order that Homesite and Zurich now appeal.

## II.    STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a), in part; *see also Painter*, 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 4 ("Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.").

As to declaratory judgment actions, the SCAWV reviews a circuit court's entry of a declaratory judgment de novo, because the principal purpose of a declaratory judgment action is to resolve legal questions. Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995). The SCAWV has long held that as to contractual agreements, such as insurance policies, "[i]t is the province of the court, and not of the jury, to interpret a written contract." Syl. Pt. 1, *Stephens v. Bartlett*, 118 W. Va. 421, 191 S.E. 550 (1937) (quoting Syl. Pt. 6, *Franklin v. T.H. Lilly Lumber Co.*, 66 W. Va. 164, 66 S.E. 225 (1909)). As to the interpretation of an insurance contract, the SCAWV has found that "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question

8

of law." Syl. Pt. 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002).

Moreover, the SCAWV has stated that "[t]he interpretation of an insurance contract . . . is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Assoc., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). With these standards in mind, we now address the parties' arguments on appeal.

## III.    DISCUSSION

We begin our review by considering the argument raised by Zurich on appeal, which must necessarily begin with an examination of the Zurich Auto Policy provisions. The *Covered Autos Liability Coverage* portion of the Zurich Auto Policy provides that Zurich will "pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[6]

---

[6] Further, within the *Covered Autos Liability Coverage* section, a subsection titled "Who is an Insured[,]" is noted. This subsection identifies an insured as "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow . . ." Under Section V– DEFINITIONS, the terms accident, auto, bodily injury, insured, loss, and suit are defined. Accident "includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" Auto was defined as "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." Insured was defined as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." Loss was stated as a "direct and accidental loss or damage." Lastly, suit was defined as a civil proceeding in which damages because of "bodily injury" or "property damage" to which the insurance applies are alleged.

9

On appeal, Zurich argues that the circuit court erred in finding that the Zurich Auto Policy affords coverage to Allen for the negligent hiring/retention claims raised by the Green Estate. Specifically, Zurich alleges that because the claims of the Green Estate against Allen do not seek to hold Allen liable for damages resulting from "the ownership, maintenance, or use of an auto" that coverage does not apply.

As to the reading of insurance policies, it is the general rule of law in West Virginia that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986), *overruled on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons*, 177 W. Va. 734, 356 S.E.2d 488 (1987); *accord* Syl. Pt. 2, *Russell v. State Auto. Mut. Ins. Co.*, 188 W. Va. 81, 422 S.E.2d 803 (1992). In *Am. States Ins. Co., v. Surbaugh*, 231 W. Va. 288, 292, 745 S.E.2d 179, 183 (2013), the SCAWV, citing *Payne v. Weston*, 195 W. Va. 502, 466 S.E.2d 161 (1995), reasoned that "[i]n West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally . . . [A] court should read policy provisions to avoid ambiguities and not torture the language to create them." Further, the *Payne* Court noted:

> We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and, in doing so, we construe all

parts of the document together. We will not rewrite the terms of the policy; instead, we enforce it as written.

195 W. Va. at 507, 466 S.E.2d at 166.

In accord with this premise, in *Cherrington v. Erie Insurance Property and Casualty Co.*, 231 W. Va. 470, 486, 745 S.E.2d 508, 524 (2013), the SCAWV reiterated that it "construes insurance policies according to express language set forth therein."

Below, the circuit court examined the applicable policy provisions of the Zurich Auto Policy and applied said provision pursuant to the express language contained therein. The provision requires that Zurich "pay all sums an insured legally must pay as damages because of bodily injury . . . caused by an accident . . . and resulting from the ownership, maintenance and use of a covered auto." The circuit court determined that this policy provision focused on bodily injury caused by an accident, as opposed to an examination of the insured's conduct. Hence, the court concluded that as the liability of Allen for the negligent retention/hiring claims raised by the Green Estate was tied to "bodily injury" caused by an auto accident involving a covered auto, that the Zurich Auto Policy provides coverage to Allen. We agree.

11

Here, the reading of the plain language of the policy provision (which Zurich identifies as clear and unambiguous in its appellate brief) establishes that Zurich is only obligated to "pay all sums" if the "insured" is legally obligated to pay such damages because of bodily injury caused by an accident resulting from the use of any covered auto. Applying the undisputed facts of the underlying case, Allen is legally obligated (due to its settlement of the claims of the Green Estate) to pay damages to the Green Estate due to bodily injury (which is defined to include death) that was caused by the April 20, 2022, accident and resulted from Mr. Marple's use of the vehicle owned and operated by Nu Creek, a contractor hired by Allen. Given the express language of the Zurich Auto Policy and the undisputed underlying facts, we find no error in the circuit court's award of summary judgment to Allen, as to the Zurich Auto Policy.

In advancing its argument, Zurich suggested that the circuit court's order is contrary to West Virginia law as it adopted a "theory of liability" approach. On appeal, Zurich argues that there are two main approaches utilized by courts in other states to assess if a claim or suit is caused by the use of an auto for purposes of determining insurance coverage: "cause of injury" and "theory of liability." Cause of injury looks to determine if the injury or damage arose from the use of an auto. Theory of liability looks to whether a specific cause of action (theory of liability) is asserted against the insured involved use of an auto. Zurich argues that in *Huggins*, the SCAWV "clearly adopted" the theory of liability approach and rejected the cause of injury approach. We disagree. Our examination of the

12

*Huggins* decision shows the SCAWV's reliance on the express provisions of the Nationwide policy at issue, not a generalized approach used by courts in other states. Accordingly, we find no merit in Zurich's argument in this regard.

We now turn to the argument raised by Homesite on appeal, that the circuit court erred in finding that the auto exclusion contained in the Homesite Policy does not preclude coverage for Allen for the claims asserted against it by the Green Estate.[7] Per the provisions of the Homesite Policy, that policy followed the "same provisions, exclusions and limitations of the 'controlling underlying insurance[,]'" which was acknowledged by all parties as the Axis policy.[8] Simply stated, the provisions, exclusions, and limitations of the Axis policy govern the Homesite Policy's applicability to the underlying claims against

---

[7] We generally note that in evaluating whether an exclusion in a policy of insurance applies the exclusion is construed strictly in favor of the insured. Syl. Pt. 5, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled, in part, on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998).

[8] Specifically, the Insuring Agreement of the Homesite Policy states:

> We will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages because of "injury or damage" to which this insurance applies. Except as otherwise stated in this policy, this insurance follows the same provisions, exclusions and limitations of the "controlling underlying insurance" in effect at the inception date of that policy. This insurance will not be broader than "controlling underlying insurance."

13

Allen. The Axis policy contained an "Automobile Liability Exclusion" that stated "[t]he policy does not apply to any claim, **suit**, **loss** or any other cost or expense arising out of the ownership, maintenance, operation, use, entrustment to others or **loading or unloading** of any **auto**."[9]

Below, the circuit court found, and we now concur, that in order to trigger the Homesite Policy exclusion, the claim, suit, or loss must arise out of ownership, maintenance, operation, use or entrustment of any auto. Here, the claim, suit, or loss against Allen alleged by the Green Estate was one of negligent hiring/retention of an independent contractor and was premised upon acts independent of the April 20, 2022, motor vehicle accident. Thus, because the Homesite Policy exclusion focuses on the nature of the claim rather than bodily injury, the exclusion was not triggered by the claims raised by the Green Estate against Allen and does not bar coverage to Allen under the Homesite Policy. Accordingly, we find no error with the circuit court's award of summary judgment to Allen with respect to the inapplicability of the auto exclusion in the Homesite Policy.

---

[9] The Axis Policy defined the term auto as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment." Loss was defined as "damages the Insured becomes legally obligated to pay as judgments or settlements." Suit was defined as "a civil proceeding in which covered loss is alleged." The term "claim" was not defined within the Axis Policy.

14

Like the argument advanced by Zurich with regard to the SCAWV's alleged adoption of a "theory of liability" approach in *Huggins* (a premise to which we disagree), Homesite argues that in 2016, the SCAWV overruled *Huggins* and adopted a "cause of damages" approach in *American National Property and Casualty Co v. Clendenen*, 238 W. Va. 249, 254, 793 S.E.2d 899, 904 (2016). Much like the SCAWV's approach in *Huggins*, the Court addressed the specific language of the policies at issue in *Clendenen*, as opposed to advocating the adoption of a general "cause of damages" approach. As such, we find Homesite's arguments in this vein to be unavailing.

Homesite further suggests that the circuit court erred by holding that the words "claim, suit or loss" within the Homesite Policy exclusion are focused on the specific type of cause of action pursued by the claimant, rather than the damages sought by the claimant. Homesite argues "all three words that trigger the Homesite Policy [exclusion] (claim, suit, loss) ultimately refer to the damages sought by the claimant in question."

Here, the circuit court found that because the Homesite Policy exclusion focuses on the nature of the claim rather than bodily injury, the exclusion was not triggered. However, the word "claim" was not defined within the Homesite Policy or Axis Policy. Thus, this Court must give this term its plain and ordinary meaning. The parties cite Black's Law Dictionary (12th Ed. 2024), which defines "claim" in its third definition as "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a

15

complaint in a civil action specifying what relief the plaintiff asks for." Homesite argues that, according to this definition, "claim" should be interpreted as a demand for money or legal remedy. However, Homesite ignores the fourth definition of claim set forth in Black's Law Dictionary, which defines the term as "[a]n interest or remedy recognized at law; the means by which a person can obtain a privilege, possession, or enjoyment of a right or thing; cause of action." Thus, contrary to Homesite's argument, the plain and ordinary definition of claim includes a focus on the theory of liability (i.e., the cause of action) asserted against the insured and is in accord with the circuit court's ruling. Accordingly, we find no error in the circuit court's award of summary judgment to Allen with regard to the Homesite auto exclusion.

Both Zurich and Homesite raise an issue with the circuit court's general finding that each of the applicable policy provisions are ambiguous, simply because of the "competing interpretations asserted by the parties." We agree that the circuit court's April 25, 2025, Order is devoid of any findings with regard to an identification of the purported ambiguity within the policies at issue. Instead of making a particular ruling with regard to the alleged ambiguous language within the policies, the court simply refers to the parties' "competing interpretations" of said policies as evidence of the ambiguity. The SCAWV has long held that "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. Pt. 1, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W. Va. 252, 162 S.E.2d 189 (1968).

16

Here, we find no ambiguity with regard to the policy provisions at issue and find them to be clearly stated. However, while the circuit court erred in finding ambiguity within the policy provision at issue, it is of no moment, as the circuit court did not identify or consider any ambiguity in its analysis of the pertinent policy provisions. Thus, as the finding of ambiguity had no import in the circuit court's analysis below, we declare this finding to be harmless error.[10]

## IV.   CONCLUSION

Based on the foregoing, we affirm the Circuit Court of Upshur County's April 25, 2025, Order and find no reversible error.

Affirmed.

---

[10] We further note that in support of their coverage positions, Zurich and Homesite each cite a litany of cases (including out of jurisdiction cases), which they contend are compelling and require this Court to adopt the positions advocated by Zurich and/or Homesite. However, our review of these cases provides that each is distinguishable from the underlying case by varying facts or specific policy language. As such, and given the necessity of applying each individual insurance policy provision pursuant to the particular language of that provision, as required by *Payne*, we find no merit in the arguments advanced by Zurich and Homesite related to these cases.